**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

IN THE MATTER OF THE SEARCH OF
THE FOLLOWING IPHONE: SLATE GRAY
APPLE IPHONE WITH CLEAR CASE,
INCLUDING ANY REMOVABLE
STORAGE MEDIA CONTAINED WITHIN
THE PHONES, CURRENTLY LOCATED        Case No. 2:24-mj-416
AT FRANKLIN COUNTY CORRECTION
CENTER, 2551 FISHER ROAD,
COLUMBUS, OHIO 43204.

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER**
**RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Janna Penfield, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this Affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property

described herein—an electronic device—which is currently in law enforcement possession, and

the extraction from that property of electronically stored information described in further detail

in Attachment A.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF) and have been since in August 2018.  Prior to becoming a Special Agent with

ATF, I was a United States Probation Officer with the United States Probation Department

through the Southern District of Ohio from October 2014 through January 2018. Additionally,

from August 2007 through October 2014, I was a Parole Officer through the State of Ohio,

which included a special assignment position with the United States Marshal Service as a Task

Force Officer on the Southern Ohio Fugitive Apprehension Strike Team. I have completed the

Federal Criminal Investigator Training Program and the ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also completed the Initial Pretrial and Probation Training Program at the Federal Law Enforcement Training Center in Charleston, South Carolina, and the State of Ohio Parole Academy in Columbus, Ohio. In addition to the firearms, arson, and explosives related training received in these courses, I have also conducted and participated in investigations involving firearms and narcotics. Further, I have conducted investigations utilizing cellular telephone data, including but not limited to precision locates, cell-site activation information as well as reviewing call detail information.

3.      The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  I did not, however withhold any information or evidence that would negate probable cause.

4.      Based on the facts set forth in this Affidavit, there is probable cause to believe that Freddie JOHNSON, (hereinafter "JOHNSON") has violated Title 18, United States Code Section 922(g)(1), Felon in Possession of a Firearm. This offense is referred to throughout as the TARGET OFFENSE.  As explained within, there is probable cause to search the cellular telephone device identified below for evidence of the TARGET OFFENSE as described in Attachment A.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.      The property to be searched is a slate gray Apple iPhone with clear case, including any removable storage media contained within the phone, (hereinafter "the **TARGET TELEPHONE**"). The **TARGET TELEPHONE** is currently located at the Franklin County

2

Correction Center, 2551 Fisher Road, Columbus, Ohio 43204. As explained below, the **TARGET TELEPHONE** was recovered from the traffic stop conducted by Whitehall Police Department when JOHNSON was arrested. JOHNSON was taken into custody and charged with Improper Handling of a Firearm (F4), Carrying Concealed Weapon (F4), Weapons Under Disability (F3) and Obstruction Official Business (F5) in Franklin County Court of Common Pleas (Case Number 24CR3919).

6.　　The applied-for warrant would authorize the forensic examination of the **TARGET TELEPHONE** for the purpose of identifying electronically stored data particularly described in Attachment A.

## PROBABLE CAUSE

7.　　On July 7, 2024, Officers with the Whitehall Police Department (WPD) were alerted on FLOCK (a camera system) to a stolen vehicle, later identified as a 2013 red Ford Escape bearing Ohio license plate KEN3730, which was parked in the Walmart parking lot located at 3657 East Main Street. When Officer Bailey arrived on scene, Sergeant Hevezi already made contact with the driver, later identified as Marshea Frank, who was in custody. Therefore, Officer Bailey made contact with the front passenger, later identified as Freddie JOHNSON JR (B/M; DOB: 05/07/1986), who was asked to exit the vehicle. While Officer Bailey was making contact with JOHNSON, the rear driver side female passenger exited the vehicle and began to walk away. The female complied and got back into the vehicle.

8.　　JOHNSON exited the vehicle as instructed and told to turn around, so he could be placed in handcuffs. JOHNSON refused to turn around as instructed by the Officer, so Officer Bailey placed his hands on JOHNSON to turn him in the direction he wanted to face. Officer Bailey was able to get both JOHNSONs hands behind his back, but as Officer Bailey was

3

placing handcuffs on JOHNSON, he abruptly jerked his arms away and pulled free. JOHNSON then began running away from the Officers. Officer Bailey was able to catch up to JOHNSON enough to grab onto JOHNSON; however, while doing so JOHNSON made an abrupt turn which caused the Officer to miss. This caused Officer Bailey to slide on the pavement and begin falling towards the ground. While falling, Officer Bailey was able to twist his body and grab onto one of JOHNSONs leg and hip area. This caused JOHNSON to lost balance and fall. Once JOHNSON feel, he began to move and squirm in an attempt to get away from Officers again. While Officer Bailey held onto JOHNSONs leg, another Officer announced their taser was out. The Officer was given a verbal directive to deploy their taser, so the Officer would know it would not hit Officer Bailey. The Officer deployed their taser, hitting JOHNSON with no effect. JOHNSON continued to pull his hands away from the officers. Eventually JOHNSON was handcuffed and placed in the rear of a marked police car.

9.     While the foot chase was occurring with JOHNSON, the rear female passenger was able to run from the scene unidentified. Additionally, Sergeant Hevezi observed a firearm, later identified as a Smith and Wesson, .40 caliber handgun bearing serial number FDX1305 which appeared to have fallen out of JOHNSONs pants (see attached photographs). The Sergeant advised he observed the firearm sliding across the ground away from JOHNSON and Officer Bailey as they fell to the ground. A search of the stolen car revealed the following: a glass pipe with residue, a teal glasses case that contained a white rock like substance, a few dollar bills, and JOHNSONs wallet. JOHNSONs wallet contained one (1) pink pill. JOHNSON also had a small bag with suspected marijuana on his person. There was also a cellular telephone **(TARGET TELEPHONE)** located on the front passenger seat, which was booked into JOHNSON's property at the Franklin County Corrections Center. JOHNSON refused medical treatment, and

4

was charged with Improper Handling of a Firearm, Carrying Concealed Weapon, and Weapon Under Disability and was ultimately transported to the Franklin County Jail.

10.    JOHNSON also has the following prior felony convictions, all of which are punishable by a term of imprisonment exceeding one year: Failure to Appear (F4), Franklin County Court of Common Pleas, Case Number 13CR351; Weapons Under Disability (F3), Franklin County Court of Common Pleas, Case Number 13CR2030; Weapons Under Disability (F3), Franklin County Court of Common Pleas, Case Number 12CR5649; Robbery (F3), Franklin County Court of Common Pleas, Case Number 07CR1013; and Carry Concealed Weapon (F4), Franklin County Court of Common Pleas, Case Number 05CR1290

11.    S/A Penfield is aware that JOHNSON has a prior federal conviction in the Southern District of Ohio for Conspiracy to Commit Racketeering (Case Number CR2-14-127(12). JOHNSON is currently on supervised release for this conviction.

12.    As referenced above in paragraph #9, the **TARGET TELEPHONE** was recovered from inside the vehicle from the traffic stop conducted by Whitehall Police Department (3657 East Main Street, Whitehall, Ohio) where JOHNSON was arrested after a short foot chase with police.

## **TARGET TELEPHONE RELATIONSHIP TO ILLEGAL ACTIVITY**

13.    The **TARGET TELEPHONE** identified in this requested search warrant was recovered from inside the vehicle from the traffic stop conducted by Whitehall Police Department (3657 East Main Street, Whitehall, Ohio) where JOHNSON was arrested after a short foot chase with police.

14.    The **TARGET TELEPHONE** is currently in the lawful possession of the Franklin County Correction Center contained with JOHNSONs other property.  While ATF

and/or Whitehall Police Department might already have all necessary authority to examine the **TARGET TELEPHONE**, I seek this additional warrant out of an abundance of caution to be certain that an examination of the **TARGET TELEPHONE** will comply with the Fourth Amendment and other applicable laws.

15. I know through training and experience that cellular telephone devices are commonly used to access social media such as the Instagram, Facebook, or SnapChat to receive and exchange messages related to unlawful acts.

**TARGET TELEPHONE's Relationship to the violation of 18 U.S.C. § 922(g)(1):**

17. As indicated above, the investigation has indicated that JOHNSON was arrested by Whitehall Police Department after a traffic stop was conducted. JOHNSON was the front passenger of a stolen vehicle and attempted to flee the scene when Whitehall Police attempted to place JOHNSON in handcuffs. After a short foot chase, a firearm fell out of JOHNSONs waistband. I know through my training and experience, and in speaking with other law-enforcement officers, that cellular telephone devices are commonly used to arrange unlawful transactions—including the unlawful sale of firearms to prohibited persons; to facilitate those straw purchases through the exchange of photographs of the relevant firearms and proposed terms of payment; and to assist potential straw purchasers and intended recipients in meeting up with one another through use of the phone's GPS and mapping software and applications. Moreover, I know through training and experience that individuals who illegally possess firearms often keep information on their cellular phones related to the firearms, including communications regarding the firearms, information regarding the purchase and possession of the firearms, and picture(s) of the firearms.

16.     In my training and experience, I know that the **TARGET TELEPHONE** has been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **TARGET TELEPHONE** first came into the Franklin County Correction Center's possession.  However, since being placed in JOHNSONs property at the jail, the **TARGET TELEPHONE** has lost all battery life.

17.     Moreover, relevant here, Your Affiant knows individuals commonly use their cell phones to send text messages, voice messages, video messages and other chat based or social media platforms to discuss and plan their criminal activities.  Call logs, text logs, and content records showing such an arrangement are likely to still be on the **TARGET TELEPHONE**. Additionally, Your Affiant knows that individuals take pictures of their firearms, narcotics, and illegally derived proceeds, and those pictures can be stored on the devices.   In addition, cellular telephones are commonly in the physical possession of owners which would yield information as to where the conspirators may be meeting, secreting the firearms into vehicles, acquiring firearms for the purpose of diversion to the criminal market, or other actions in furtherance of the conspiracy.  Location data stored on the **TARGET TELEPHONE** is likely to show where the target cellular telephone was located during times of service, and that information, combined with other records, may display a time that all identified telephone numbers for co-conspirators were in the same general area of one another.  The information sought in this warrant will further establish the patterns of those involved in the conspiracy.

## TECHNICAL TERMS

18.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0–255, separated by periods (e.g., 121.56.97.178).  Every computer or cellular telephone (beyond 2G technology) attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or cellular telephone may be directed properly from its source to its destination.  Most Internet service providers control a range of IP

8

addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

c. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

19. Based on my training, experience, and research, I know that the **TARGET TELEPHONE** has capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and personal digital assistant ("PDA"). In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the **TARGET TELEPHONE**. This information can sometimes be recovered with forensics tools.

21. *Forensic evidence.* As further described in Attachment A, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET TELEPHONE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET TELEPHONE** because data on the storage medium can provide evidence of a file that was once

on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    a. Forensic evidence on a device can also indicate who has used or controlled the **TARGET TELEPHONE**. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    c. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer/cellular telephone is evidence may depend on other information stored on the computer and the application of knowledge about how a computer/cellular telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

    22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET TELEPHONE** consistent with the warrant. The examination may require authorities to employ

10

techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **TARGET TELEPHONE** to human inspection to determine whether it is evidence described by the warrant.

23.    *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24.    Based on my knowledge, training, experience, and the investigation to date, I further submit that there is probable cause to believe that the property to be searched as described contains evidence, as described in Attachment A, of a violation(s) of:  18 United States Code § 922(g)(1), that is, felon in possession of a firearm; and 21 United States Code § 841(a)(1), that is, possession with intent to distribute controlled substance(s).

25.    Based on the foregoing, I request that the Court issue the proposed search warrant under Federal Rule of Criminal Procedure 41 to search the **TARGET TELEPHONE** as described and to seize those items set forth in Attachment A which constitute evidence, fruits, and instrumentalities of a violation(s) of the **TARGET OFFENSES**.

Respectfully submitted,

Janna Penfield
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

This Affidavit was sworn to by the Affiant by telephone after a PDF was transmitted by email, per Crim R. 3, 4(d), and 4.1 on this _____ day of August 2024.

August 22, 2024

Kimberly A. Jolson
United States Magistrate Judge